J-S13003-21

## NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAHMAL MUNRO | : | |
| | : | |
| Appellant | : | No. 1385 EDA 2019 |

Appeal from the Judgment of Sentence Entered April 22, 2019
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0002000-2018

BEFORE:   OLSON, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.:                          Filed:November 5, 2021

Appellant, Jahmal Munro, appeals from the April 22, 2019 judgment of

sentence that imposed, *inter alia*, an aggregate sentence of 54 to 108 months'

incarceration after a jury convicted Appellant of manufacture, delivery, or

possession with intent to manufacture or deliver a controlled substance and

firearms not to be carried without a license, and after the trial court, in a

bench trial, convicted Appellant of persons not to possess, use, manufacture,

control, sell, or transfer firearms.[1]  We affirm.

The trial court summarized the procedural history as follows:

[On] February 14, 2018, Appellant was formally arraigned and
charged with various violations relating to the possession and

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30) and 18 Pa.C.S.A. §§ 6106(a)(1) and 6105(a)(1),
respectively.

distribution of a controlled substance and several firearm-related violations. A jury trial commenced [] on March 20, 201[9,] and concluded the following day. [Upon] conclusion of the trial, the jury found [] Appellant guilty of [manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance] and [firearms not to be carried] without a license. Based on a stipulation of counsel, the charge of [persons not to possess firearms] was considered by the [trial] court separately. Appellant was found guilty of that charge as well. [On April 22, 2019, Appellant] was sentenced to an aggregate term [] of [54 to 108] months[' incarceration]; ordered to pay costs, fees[,] and other assessments; [ordered] to submit to DNA testing; [ordered] to forfeit firearms and cellphones; and [] declared ineligible for either boot camp or [recidivism risk reduction incentive] treatment.

Trial Court Opinion, 9/27/21, at 1-2 (extraneous capitalization and footnotes omitted).

On May 2, 2019, while still represented by counsel, Appellant filed *pro se* a notice of appeal and a post-sentence motion for reconsideration of sentence. This Court previously determined that, based upon the procedural posture of the case *sub judice*, "Appellant's *pro se* submissions did not offend the considerations of hybrid representation." **Commonwealth v. Munro**, 2021 WL 3560204, *3 (Pa. Super. 2021) (unpublished memorandum) (stating that, because the trial court provided Appellant's then-counsel with notice of Appellant's *pro se* submissions and Appellant's counsel subsequently filed a motion stating he "perfected [Appellant's] appellate rights," Appellant's then-counsel implicitly adopted the *pro se* submissions and, thus, Appellant's *pro se* submissions did not offend the considerations of hybrid representation). In so finding, this Court explained,

the trial court should have acted on Appellant's post-sentence motion. ***Commonwealth v. Cooper***, 27 A.3d 994, 1008 (Pa. 2011) (holding that, a *pro se* notice of appeal filed before or contemporaneously with a timely post-sentence motion is deemed a premature *pro se* appeal and does not divest the trial court of jurisdiction to act on the post-sentence motion). Because the trial court did not dispose of this post-sentence motion within 120 days of its filing, Appellant's post-sentence motion was denied by operation of law pursuant to Pa.R.Crim.P. 720(B)(3)(a) on August 30, 2019. ***See*** Pa.R.Crim.P. 720(B)(3)(a) (stating, if the trial court fails to dispose of the post-sentence motion within 120 days of its filing, and has not granted a 30-day extension in which to do so, then the motion shall be deemed denied by operation of law).

A review of the trial court docket, however, reveals that the clerk of courts did not enter an order on behalf of the trial court setting forth that the post-sentence motion was denied by operation of law. Pa.R.Crim.P. 720(B)(3)(c) (stating, "[w]hen a post-sentence motion is denied by operation of law, the clerk of courts shall forthwith enter an order on behalf of the [trial] court, and, as provided in [Pa.R.Crim.P.] 114, forthwith shall serve a copy of the order on the attorney for the Commonwealth, the defendant's attorney, or the defendant if unrepresented, that the post-sentence motion is deemed denied"). The failure of the clerk of courts to enter an order on behalf of the trial court setting forth that Appellant's post-sentence motion was denied by operation of law constitutes a break-down of the judicial system. Therefore, we deem Appellant's *pro se* notice of appeal to be filed on August 30, 2019, upon denial, by operation of law, of his post-sentence motion. Pa.R.A.P. 905(a)(5) (stating, "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof"). For the foregoing reasons, we conclude, by operation of the applicable procedural rules, that Appellant validly invoked our appellate jurisdiction through the filing of a timely notice of appeal from a judgment of sentence made final by the denial of a post-sentence motion.

***Id.*** at *4 (footnote omitted). Ultimately, this Court remanded the case to the trial court, pursuant to Pa.R.A.P. 1925(c)(3), in order that Appellant's counsel, Steven F. O'Meara, Esquire ("Attorney O'Meara") could "file a Rule 1925(b)

statement *nunc pro tunc*" and the trial court could subsequently file a Rule 1925(a) opinion. ***Id.*** at *5.

Appellant filed a Rule 1925(b) statement *nunc pro tunc* on August 25, 2021, and the trial court filed its Rule 1925(a) opinion on September 27, 2021.

Appellant raises the following issues for our review:

1. Did the trial court err in not finding that there was legally insufficient evidence to sustain a guilty verdict for firearms not to be carried without a license, possession of a firearm prohibited, and possession of a controlled substance with intent to deliver, where the testimony and evidence presented failed to prove beyond a reasonable doubt that Appellant possessed a firearm or controlled substances with the intent to distribute?

[2.] Did the assistant district attorney's conduct throughout the trial [constitute] prosecutorial misconduct? Specifically, [did] the consistent badgering of the victim, suggesting intimidation of the victim by [] Appellant and his agents, as well as the threats that the assistant district attorney would introduce a witness to testify that the victim was intimidated into not testifying, but [did not subsequently] present said witness [amount to] prosecutorial misconduct [that] was so [prejudicial and] egregious as to [prevent a fair trial and] require a dismissal of all criminal charges against the defendant?

Appellant's Rule 1925(b) Statement *Nunc Pro Tunc*, 8/25/21 (extraneous capitalization omitted).[2]

---

[2] Appellant's second and third issues raising similar claims of prosecutorial misconduct have been consolidated for purpose of disposition.

- 4 -

In his first issue, Appellant argues there was insufficient evidence to support his convictions. Appellant's Brief at 10-11.[3] Specifically, Appellant contends there is insufficient evidence that he possessed a firearm or that he intended to distribute the controlled substance that was found in his possession. *Id.* Appellant asserts that "the evidence against him was strictly circumstantial" and that the Commonwealth failed to present evidence that he possessed a firearm. *Id.* at 10. Appellant argues that no firearm was found by the police "on his person or at [the] residence where he was [discovered]" shortly after the incident and, therefore, he could not be found to have possessed the firearm. *Id.* Appellant further contends that "the small quantity of marijuana (44 grams) and lack of significant other items" in his possession was insufficient to establish that he demonstrated the requisite intent to distribute the controlled substance. *Id.*

Our standard and scope of review of a challenge to the sufficiency of the evidence are well-settled.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In

---

[3] Counsel for Appellant filed a brief in support of Appellant's appeal on March 3, 2021. Upon filing a Rule 1925(b) statement *nunc pro tunc* on August 25, 2021, counsel did not file a revised brief. A review of the March 2021 brief demonstrates that the issues discussed therein address the issues raised in the Rule 1925(b) statement *nunc pro tunc*. Therefore, we consider the arguments set forth in the brief in support of Appellant's issues.

addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof or proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier[-]of[-]fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Pappas*, 845 A.2d 829, 835-836 (Pa. Super. 2004) (citation omitted), *appeal denied*, 862 A.2d 1254 (Pa. 2004); *see also Commonwealth v. Brown*, 52 A.3d 1139, 1163 (Pa. 2012) (stating that, in reviewing a claim of insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, **any** rational trier[-]of[-]fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original)).

[T]he [trier-of-fact's] individualized assessment of the credibility of the trial evidence is, as a general principle, not to be questioned by an appellate court as part of its review, even if the evidence is conflicting. [C]ourts presume the [trier-of-fact] resolved evidentiary disputes reasonably so long as sufficient evidence supports the verdict. [M]ere inconsistency and conflicts in witnesses testimony, by itself, will not furnish a basis for an appellate court to reverse a conviction [] on the grounds of evidentiary insufficiency.

*Brown*, 52 A.3d at 1165 (citations omitted). Rather, the trier-of-fact's resolution will only be disturbed "in those exceptional instances [] where the evidence is so patently unreliable that the [trier-of-fact] was forced to engage

in surmise and conjecture in arriving at a verdict based upon that evidence."

*Id.*, *citing* **Commonwealth v. Karkaria**, 625 A.2d 1167, 1170 (Pa. 1993).

To preserve a sufficiency claim, the appellant's Rule 1925(b) statement must

specify the element or elements upon which the evidence was insufficient.

**Commonwealth v. Williams**, 959 A.2d 1252, 1257 (Pa. Super. 2008).

Section 6106(a)(1) of the Pennsylvania Uniform Firearms Act of 1995

defines the offense of firearms not to be carried without a license as,

> any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S.A. § 6106(a)(1). "In order to convict a defendant for carrying a

firearm without a license, the Commonwealth must prove: that the weapon

was a firearm; that the firearm was unlicensed; and that where the firearm

was concealed on or about the person, it was outside his home or place of

business." **Commonwealth v. Hewlett**, 189 A.3d 1004, 1009 (Pa. Super.

2018), *appeal denied*, 197 A.3d 1176 (Pa. 2018). In other words, the

Commonwealth must prove, *inter alia*, that the defendant possessed the

firearm.[4]

---

[4] The only issue raised by Appellant in his 1925(b) statement *nunc pro tunc* with respect to this conviction is that the evidence was insufficient to establish that he possessed the firearm. Thus, any other claim of insufficiency in establishing the remaining elements of a crime under Section 6106(a)(1) has been waived.

Section 6105(a)(1) of the Pennsylvania Uniform Firearms Act of 1995 defines the offense of persons not to possess, use, manufacture, control, sell, or transfer firearms as,

> A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1). "In order to convict a defendant for possession of a firearm by a prohibited person, the Commonwealth must prove the defendant was previously convicted of a specific offense enumerated in section 6105" and that the defendant possessed the firearm.[5] **Hewlett**, 189 A.3d at 1009.

Section 780-113(a)(30) of the Controlled Substance, Drug, Device and Cosmetic Act prohibits "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act." 35 P.S. § 780-113(a)(30). To sustain a conviction of possession with the intent to deliver a controlled substance, "the Commonwealth must prove both the possession of the controlled substance

---

[5] The only issue raised by Appellant in his 1925(b) statement *nunc pro tunc* with respect to this conviction is that the evidence was insufficient to establish that he possessed the firearm. Thus, any other claim of insufficiency in establishing the remaining element of a crime under Section 6105(a)(1) has been waived.

and the intent to deliver the controlled substance."[6] ***Commonwealth v. Bernard***, 218 A.3d 935, 943 (Pa. Super. 2019) (original quotation marks and citation omitted).

> [W]ith regard to the intent to deliver [element], we must examine the facts and circumstances surrounding the possession. The intent to deliver may be inferred from possession of a large quantity of controlled substances. It follows that possession of a small amount of a controlled substance supports the conclusion that there is an absence of intent to deliver. If the quantity of the controlled substance is not dispositive as to the intent, [this Court] may look to other factors.
>
> Other factors to consider when determining whether a defendant intended to deliver a controlled substance include the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and the sums of cash found in possession of the defendant. The final factor to be considered is expert testimony. Expert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use.

***Id.*** (citation and original brackets omitted).

Regarding Appellant's sufficiency claim as to the element of possession to support his firearms convictions, the record demonstrates that on November 7, 2017, an Uber driver[7] transported Appellant as a passenger in

---

[6] The only issue raised by Appellant in his 1925(b) statement *nunc pro tunc* with respect to this conviction is that the evidence was insufficient to establish that he had the requisite intent to distribute the controlled substance. Thus, any other claim of insufficiency in establishing the possession element of a crime under Section 780-113(a)(30) has been waived.

[7] Uber is a ride-hailing technology company in which passengers schedule transportation (similar to taxi service) *via* vehicles that are privately owned

his vehicle. N.T., 3/20/19, at 38. The Uber driver, who was licensed to carry a firearm and was familiar with gunshot sounds, stated that upon reaching Appellant's destination, he heard a gun discharge in the backseat of his vehicle and saw smoke coming from Appellant's pants as Appellant attempted to exit the vehicle. *Id.* at 38, 50-51, 59. After hearing the gunshot, the Uber driver smelled gunpowder. *Id.* at 55. The Uber driver testified that a bullet hole and bullet fragments were found in his vehicle that were not present prior to Appellant being a passenger in the vehicle. *Id.* at 58, 65, 143. The bullet hole was in the back of the passenger seat that was located in front of Appellant as he sat in the back seat of the Uber driver's vehicle. *Id.* at 58, 140-142. The police officer who conducted a pat-down of Appellant shortly after the incident testified that he "observed what appeared to be a bullet hole in [Appellant's] right groin area of his black sweatpants." *Id.* at 125. The forensic analysis that was later conducted on Appellant's sweatpants revealed particles characteristic of gunshot residue on both the right leg and left leg of Appellant's sweatpants. *Id.* at 146. In viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, there was sufficient evidence to enable to jury, as fact-finder, to find that Appellant possessed a firearm at the time of the incident. Therefore, Appellant's first issue as it relates to the element of possession is without merit.

---

and operated by the driver using the company's web-based or mobile application technology. *See* https://www.uber.com (last visited 10/25/20).

As to Appellant's sufficiency claim challenging the intent element of the possession of a controlled substance with the intent to deliver conviction, the record demonstrates that the Uber driver identified Appellant as having a blue backpack that smelled like marijuana when he was in the Uber driver's vehicle. *Id.* at 38, 54. The police later recovered the blue backpack from a closet in the residence where Appellant was taken into custody. *Id.* at 109-110. Upon searching the backpack, the police recovered vacuum sealed bags, later identified as containing 44.87 grams of marijuana, a scale, two pills, later identified as containing cathinone and n-ethylpentylone, one pill, later identified as containing tetrahydrocannabinol, and sandwich bags, as well as several vials, both of which are commonly used for packaging marijuana for distribution. *Id.* at 78-82, 110-111, 186-190. Two cellular telephones were also recovered from the backpack. *Id.* at 85. One cellular telephone contained images depicting financial and personal information belonging to Appellant. *Id.* at 153-154. The second cellular telephone recovered from the backpack contained numerous text messages pertaining to the selling of and the purchasing of narcotics. *Id.* at 156, 158. In viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, there was sufficient evidence to enable to jury, as fact-finder, to find that Appellant had the requisite intent to deliver the controlled substances that were in his possession. Specifically, Appellant possessed a scale, which is commonly used to measure controlled substances prior to distribution, as well as vials and sandwich bags that are commonly used to package controlled substances for

distribution. Therefore, Appellant's first issue as it relates to the element of intent is without merit.

Appellant's second issue raises a claim of prosecutorial misconduct based upon the Commonwealth's questioning of the Uber driver.[8] Appellant's Brief at 11-17. Appellant contends that the Commonwealth's "references throughout trial, to the alleged intimidation of [the Uber driver] by [Appellant] were introduced to simply inflame the jury and unduly pre[j]udice [Appellant] before [the] jury." *Id.* at 12. In particular, Appellant contends the following questioning by the Commonwealth of the Uber driver was prejudicial:

| [Commonwealth:] | Has anyone been in contact with you to ask you to not testify today? |
|---|---|
| [Uber Driver:] | Nobody's contacted me. |
| [Commonwealth:] | Has [Appellant] been in contact with you - |
| [Uber Driver:] | Nobody's – |
| [Commonwealth:] | - to ask you not – |
| [Uber Driver:] | - contacted me at all. |
| [Commonwealth:] | - to testify today? Would you be surprised if I had – if there was a witness that does believe that you were contacted not to testify? |
| [Uber Driver:] | If a witness believes that, then you need to put him on the stand. |
| [Commonwealth:] | I will. Are you afraid to testify today? |

---

[8] The trial court permitted the Commonwealth to treat its own witness, the Uber driver, as a hostile witness due to the Uber driver's reluctance to testify. N.T., 3/20/19, at 32.

| | |
|---|---|
| [Uber Driver:] | I'm just trying to protect my family. I just want my family to live because I'm the only one working right now. My wife works, but I'm the breadwinner and every time I'm in [c]ourt or not at work, then my family [does not] eat. |
| [Commonwealth:] | I understand and I want – and listen, we'll get you out of here as soon as we can. |

N.T., 3/20/19, at 36-37.

Our Supreme Court has held that,

If the defendant thinks the prosecutor has done something objectionable, he may object, the trial court rules, and the ruling - not the underlying conduct - is what is reviewed on appeal. Where [] no objection was raised, there is no claim of "prosecutorial misconduct" as such available.

***Commonwealth v. Cox***, 983 A.2d 666, 685 (Pa. 2009). A review of the notes of testimony demonstrates that Appellant did not lodge a contemporaneous objection during the now-challenged questioning of the Uber driver. Therefore, we find Appellant waived this issue.[9] ***Id.***

Judgment affirmed.

_____

[9] To the extent Appellant's claim of prosecutorial misconduct encompasses the Commonwealth's questioning of a police officer as to his observation of changes in the Uber driver's willingness to discuss the circumstances of Appellant's involvement in the incident, we find this claim to be without merit. ***See*** N.T., 3/20/19, at 159-160. Any attempt by the Commonwealth, under the guise of a prior inconsistent statement, to solicit testimony from the police officer as to what the Uber driver may have told the police officer regarding contact with Appellant was denied by the trial court. ***Id.*** at 160-161. Moreover, the discussion of the police officer's knowledge of Appellant's contact with the Uber driver was done at sidebar and not in front of the jury. ***Id.***

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/5/21