J-S47008-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
SAMIR F. ABDUL-AZIZ   :
  :
Appellant   :   No. 285 EDA 2023

Appeal from the Judgment of Sentence Entered January 4, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No:  CP-51-CR-0000794-2022

BEFORE:   STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.            **FILED MAY 28, 2024**

Appellant, Samir F. Abdul-Aziz, appeals from his judgment of sentence of two years' probation for two firearms offenses, 18 Pa.C.S.A. §§ 6106 and 6108.  Appellant contends that the trial court erred by denying his motion to suppress a firearm obtained from a search of a bag in the passenger seat of his car during the traffic stop that led to his arrest.  We agree that the trial court erred because the officer who searched the bag lacked reasonable suspicion that it contained a weapon.  Accordingly, we reverse Appellant's conviction and remand for further proceedings.

The record from Appellant's suppression hearing reflects that on the evening of January 18, 2022, Officer Sutton was on duty and driving down the 1400 block of West Butler Street in Philadelphia.  He was in that location

_____

[*] Former Justice specially assigned to the Superior Court.

because "we had a lot of crimes and there were shootings in that area." N.T., Suppression Hearing, 10/5/22, at 7. At around 10:50 p.m., Officer Sutton saw a blue Malibu dart around a car in its lane of traffic and pass through a red light at the intersection. Officer Sutton activated his lights and sirens, and the driver, Appellant, pulled over.[1] Officer Sutton questioned Appellant about why he drove through the red light. Footage from the officer's body worn camera ("BWC"), entered into evidence by the Commonwealth, shows that Appellant answered that he had a headache, was very tired, and had grown impatient when the driver in front of him moved too slowly through the light. The officer testified that Appellant seemed nervous and "his words were coming out mixed up and stuttered." *Id*., at 8. The officer asked Appellant whether he had been drinking, and Appellant stated he had not.

Officer Sutton testified that while they were talking, Appellant "is looking in the general area and then he would talk to me and then look at that area on the passenger side. And on the passenger seat there is a black bag." *Id.*

Officer Sutton testified that at this point, "the investigation turned into a possible investigation of [whether Appellant] was intoxicated." *Id.* at 14. The officer again asked Appellant if he drank or used drugs or if he had "any drugs or anything" in the car, and Appellant said he did not. *Id.* at 9. Officer

---

[1] Appellant does not dispute that the initial stop of his vehicle was proper. Appellant only challenges the actions taken by Officer Sutton after the stop had begun.

Sutton told Appellant to exit the car and said he was going to test his sobriety. He frisked Appellant without recovering anything.

After instructing Appellant to stand to the rear of the car with his partner, Officer Sutton shined his flashlight into the driver's seat and console. He then reached over to the passenger seat and felt, through the black bag, what he recognized to be a firearm. *Id.* at 10, He then placed Appellant under arrest.

Prior to trial, Appellant filed a motion to suppress the gun, arguing that the police lacked reasonable suspicion to conduct a protective sweep of his car. The court held a suppression hearing in which Officer Sutton testified. Appellant did not present any evidence. The court denied the motion to suppress and went on to find Appellant guilty of both firearm charges. Appellant filed a timely appeal, and both Appellant and the court complied with Pa.R.A.P. 1925.

Appellant raises a single issue in this appeal, "Did the lower court err in denying suppression of a gun seized during a frisk of [Appellant's] car where police lacked reasonable suspicion that he had a weapon in the car and was dangerous?" Appellant's Brief at 3.

The standard of review for the denial of a motion to suppress evidence is as follows:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those

facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Bernard*, 218 A.3d 935, 940 (Pa. Super. 2019).

In the present case, the trial court denied Appellant's motion to suppress on the ground that Officer Sutton had reasonable suspicion to believe that Appellant had a firearm in his car. The court stated:

[Appellant] had driven into an on-coming lane to pass a car and then drove through a red light; the stop occurred at night; and [Appellant] stuttered and glanced repeatedly at a bag on the passenger seat while answering Officer Sutton's questions ... [Appellant's] nervous behavior and repeated glances at the bag supported a reasonable suspicion the bag contained a weapon. Officer Sutton lawfully frisked the bag, felt a metal object in the shape of a gun, and only at that point opened the bag.

Opinion, 3/16/23, at 4. In addition to the factors cited by the trial court, we note that the traffic stop took place in a high-crime area, since Officer Sutton testified that there were shootings and a lot of crimes in this area. *Bernard*, 218 A.3d at 940 (where Commonwealth prevails in suppression motion, this Court may consider evidence offered by Commonwealth in course of appellate review).

- 4 -

The Fourth Amendment states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. "Absent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively unreasonable." *Commonwealth v. Heidelberg*, 267 A.3d 492, 502 (Pa. Super. 2021).

Generally, the warrantless search of a vehicle requires the Commonwealth to establish both probable cause and exigent circumstances. *See Commonwealth v. Alexander*, 243 A.3d 177, 181 (Pa. 2020). However, in *Michigan v. Long*, 463 U.S. 1032 (1983), the United States Supreme Court extended the principles of a limited *Terry*[2] frisk "to a search of the passenger compartment of a vehicle for weapons," often referred to as a protective sweep. *Commonwealth v. Muhammad*, 289 A.3d 1078, 1088 (Pa. Super. 2023). The *Long* Court held:

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses **a reasonable belief based on specific and articulable facts** which, taken together with the rational inferences from those facts, **reasonably warrant the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons**. [T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. If a suspect is dangerous, he is no less dangerous simply because he is not arrested[.]

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

- 5 -

*Long*, 463 U.S. at 1049-50 (footnote, citations & quotation marks omitted; emphases added).

*Long* emphasized that "roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect." *Id.* at 1049. An investigative detention during a vehicle stop "involves a police investigation 'at close range,' when the officer remains particularly vulnerable in part because a full custodial arrest has not been effected, and the officer must make a 'quick decision as to how to protect himself and others from possible danger.'" *Id.* at 1052 (*citing* *Terry*, 392 U.S. at 24, 28). Moreover, "if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside." *Id.* When considering whether a police officer had the requisite reasonable suspicion to be concerned for their safety, we must not view the facts in isolation "but in light of the totality of the circumstances[.]" *Commonwealth v. Cartagena*, 63 A.3d 294, 304 (Pa. Super. 2013) (*en banc*).

Applying the totality of the circumstances test, we have held that a defendant's "furtive movement of leaning forward and appearing to conceal something under his seat, along with his extreme nervousness and [a] night time stop, was sufficient to warrant a reasonable police officer to believe that his safety was in danger and that [the defendant] might gain immediate control of a weapon." *Commonwealth v. Buchert*, 68 A.3d 911, 916-917

(Pa. Super. 2013); *see also Commonwealth v. Simmons*, 17 A.3d 399, 401 (Pa. Super. 2011) (reasonable suspicion existed for protective sweep and search of vehicle's passenger compartment where traffic stop took place at night in high-drug and high-crime area, and officer saw defendant make furtive movement of reaching under his seat and then towards his chest, consistent with concealing weapon); *In re O.J.*, 958 A.2d 561, 566 (Pa. Super. 2008) (reasonable suspicion existed where traffic stop occurred at night, defendant initially failed to stop his vehicle when signaled by police, and defendant made "rapid and furtive hand movements over the vehicle's console," which had been left partially opened); *Commonwealth v. Murray*, 936 A.2d 76, 80 (Pa. Super. 2007) (finding reasonable suspicion where traffic stop occurred at night and in high-narcotics area, defendant's vehicle had tinted windows, and defendant made "a lot of movement in the vehicle" as officer was approaching).

In contrast, in *Cartagena*, we held that an officer lacked reasonable suspicion to conduct a warrantless search of a vehicle where (1) the stop occurred at night, (2) the defendant's vehicle had tinted windows, and (3) the defendant appeared "extremely nervous." *Id.* at 304. This Court reasoned in *Cartagena* that there was no evidence that the defendant had made furtive movements, that the stop occurred in a high-crime area, or that the police saw any indication of a weapon in the vehicle prior to the search. *Id.* at 304-306; *see also Commonwealth v. Moyer*, 954 A.2d 659, 669-670 (Pa.

Super. 2008) (evidence that vehicle's occupants engaged in furtive movements and appeared nervous was insufficient to establish reasonable suspicion); **Commonwealth v. Reppert**, 814 A.2d 1196, 1206 (Pa. Super. 2002) ("We have found furtive movements [fail to establish reasonable suspicion] even when they occur in high crime environments in the late hours of the night … Thus, we find no basis to conclude that excessive nervousness and furtive movements, even considered together, give rise to reasonable suspicion of criminal activity").

Here, while the question is close, we conclude that Officer Sutton lacked reasonable suspicion that Appellant was in possession of a firearm in his car. We acknowledge that (1) the traffic stop took place at night in a high-crime area, (2) Appellant appeared nervous, and (3) Appellant glanced several times at a package next to him within his reach. On the other hand, there is no evidence that Appellant made furtive movements at any time during the traffic stop consistent with concealment of a weapon. Nor is there any evidence that Officer Sutton saw a weapon in Appellant's vehicle before the search began. Thus, the evidence, viewed collectively, aligns more closely with decisions in which we have found a lack of reasonable suspicion (**Cartegena**, **Moyer** and **Reppert**) than with decisions in which we have found that reasonable suspicion justified a protective sweep during a traffic stop. The Commonwealth failed to present evidence that "reasonably warrant[ed]

[Officer Sutton] in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." **Long**, 463 U.S. at 1049-50.

We hold that the officer's search of the passenger compartment and seizure of the weapon was unconstitutional, and that the trial court erred by failing to suppress it. Accordingly, we reverse Appellant's judgment of sentence and remand for further proceedings.

Judgment of sentence reversed. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judge Kunselman joins the memorandum.

President Judge Emeritus Stevens files a dissenting memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/28/2024